Mr. Singleton, whenever you're ready. Thank you, your honor. May it please the court, my name is Brian Singleton and I represent the appellant. Your honors, I'd like to reserve five minutes for rebuttal. That's fine. Thank you, your honors. The issue on appeal is what the accrual date should be for the statute of limitations for the claims against the appellate defendants. The district court held that it was when the plaintiff knew or should have known of her legal injury, which the district court held was back in 2008. Your honors, we contend that obviously what they're suggesting is that she waited so long to apply for post-conviction relief and somehow that that delay perhaps prejudices the defendants. What would be your response to that? My response to that, your honor, is that that's an issue that should have been taken up at the state court level. The state had the opportunity to oppose the motion. The state also had the opportunity to appeal the order once it was entered. And I think very tellingly, they did not do either. Are we governed by Heck v. Humphrey in this matter, which is federal law? Yes, your honor. Our argument is that we are governed by Heck v. Humphrey. And in Heck, the Supreme Court held that in order to bring a claim under 1983 for an allegedly unconstitutional conviction, a plaintiff must show that the conviction has been overturned in her favor in this case prior to bringing that 1983 claim. The reasoning behind it was to avoid conflicting outcomes based on the same set of facts. It would effectively undermine the criminal conviction. So in our case, Ms. Coelho was convicted and sentenced in 2007, and then she was incarcerated in 2008. However, her conviction was not invalidated until Judge Ignacio issued his order in February of 2018. Therefore, there wasn't a favorable termination in 2018. And Ms. Coelho did not have a clear and present cause of action until that time. And so our complaint was timely filed, your honors. The court had asked us to address Thompson v. Clark. My position is it doesn't apply to this case. It's factually dissimilar. Thompson v. Clark involved the question of favorable termination, but it was as it related to prior to a conviction, where in our case, we have a conviction. So because the court, the Supreme Court was looking at favorable termination prior to conviction, the facts are analogous and do not... Does Thompson v. Clark help you in terms of what is a favorable termination? You don't have to actually show innocence. You just merely have to show that something has either been vacated or dismissed or for whatever reason, isn't that correct? Yeah, I think absolutely. I think it helps us... So why are you trying to distinguish it? Just to be accurate that there's a whole line of cases for pre-conviction and what termination, what is a favorable termination, what is not a favorable termination. In our case, we do have a conviction. So... You have a conviction that's vacated. Correct. That wasn't vacated until 2018. And sometimes in looking at accrual questions, the court will take into consideration the most analogous tort doctrine to help determine the date of accrual. I think this is important to be used as a guide. There's generally two categories of torts that the courts look at. One are torts like false imprisonment and false arrest that do not challenge the criminal proceeding itself. That doesn't apply here. The second line of cases is those that do challenge the confinement imposed pursuant to legal process, like malicious prosecution where favorable termination is required. And your honors, I argue that our facts are most analogous to malicious prosecution. In this case, we had a criminal proceeding that was initiated without probable cause, with malice that deprived Ms. Coelho of her liberty. We allege multiple constitutional violations related to her prosecution, her conviction, her sentence, her subsequent imprisonment. And because there was a conviction, and because our facts are most analogous to malicious prosecution, a favorable termination is required. And that did not occur until Judge Ignacio invalidated the underlying conviction in 2018. If we look at the- So there's no claim for false arrest or false imprisonment, correct? Correct, your honor. You mentioned it a few times in your briefs. And I thought I wasn't quite sure why you did, except maybe you did it just to distinguish that from malicious prosecution. We did do that to distinguish it from malicious prosecution because it gets a little murky when it comes to favorable termination. And I think a line can be drawn between those cases that are like false arrest and false imprisonment that don't involve the legal process that ended with an illegal conviction, and those where the legal process continued to a conviction like we have in our case. So that was the purpose, your honor, behind distinguishing those two types of cases. If we look at the cases that the district court cites in their opinion, your honors, the factual scenarios are not similar at all to our case. In fact, none of them involved any type of criminal proceeding whatsoever. The district court cited Oshifer, which was an employment discrimination case between a private individual and their former law firm employer. It did not involve any criminal proceeding whatsoever. The district court cited Samaric v. City of Philadelphia. This case dealt with the denial of a building permit by the city of Philadelphia. It involved no criminal proceeding whatsoever. And finally, the district court cited Peterson v. NCAA, which dealt with gender discrimination issues. Again, it didn't involve any type of criminal proceeding whatsoever. In the defendant, in the appellate defendant's reply brief, they cite no additional authority why the favorable termination rule should not apply. So the facts and area of the cases- Introduced by Judge Sirica. In effect, how do we assess the accrual for state law claims? Are they also subject to a favorable termination requirement? Yes, they are, your honor. They look to favorable termination as well. And I'm just looking to cite the- The only case I have is the Mueller case, Mueller fuel oil. In New Jersey, 232 Atlantic Second, 168. Do you have anything else? I believe I had another case, your honor, but I can't- Maybe what we'll do is we'll get you, you can let us know that on rebuttal. Okay. And do any of my colleagues have any further questions? Have you stated a proper Monell claim? Yes, your honor. And why so? So the Monell claim was pled in the complaint. You've alleged plausible facts? I believe so, your honor. Should that go back to the district court? As to- As to whether on a motion to dismiss. For the Monell claims or for- For the Monell claim. Oh, yeah. Against Linden. Yes, your honor. I believe that that's a question for the district court to answer. And I believe it's an issue that was raised in the appellant defendants reply brief. And we countered it. However, I would agree that it's an issue for the district court. Anything further? Okay, we'll get you back on rebuttal. Thank you, your honors. Mr. Verity. Thank you, your honors. May it please the court. This case is very problematic in regard to the plaintiffs sitting under rights. This was a trial that happened back in 2007. But isn't the problem that if they had filed something earlier, wouldn't have made any difference? Because the key thing is there has to be a favorable termination, whatever that is. I disagree because what happens in many of these cases, to avoid a statute of limitation problem, these civil rights cases are filed while criminal proceedings are pending. And usually what happens at the district level is the magistrate judge at a rule 16 conference will administratively terminate the case until such time as the disposition of the criminal case, at which point, usually in our district, it's 30 days after that, that the plaintiff has the right to make a motion to reinstate the complaint. For instance, in a false arrest case, the underlying adjudication of the criminal matter may not occur within two years. And they're barred from filing if they don't file within the two years, even though there's a pending disposition. That happens in a lot of these cases at the district court level. So she had the opportunity. The problem here is she basically set on her rights from, I mean, even after the 2007, the March 6, 2007 conviction, she didn't file an appeal. She didn't do anything until somehow this case came back by a letter from the former prosecutor, a civil attorney, inquiring as to whether or not anger management must happen. And at that point, this case got revived. I would look at Thompson talking about when a prosecution ends. And that's when basically Thompson says, the matter disposed of in such a matter that it cannot be revived and that a prosecutor would proceed further. At that point, in this point, I would say that's February 3, 2008, when the plaintiff is finally released from the county jail sentence. So in February of 2008, she has her opportunity to appeal the case, appeal the conviction, file for post-conviction relief. And the constitutional violations being alleged are the type that she would have known. The illegal appointment of Ms. Esterbrook as a prosecutor, the removal of herself from the courtroom during the initial trial, the examination of witnesses by the judge, the assumption of DeLeo, the alleged assumption of DeLeo as a prosecutor. Let's go back to Judge Sirica's question to your opposing counsel at the very outset. Doesn't heck apply here? Heck does apply. But the wrinkle here is the fact that you wait 10 years to try. It's a case where it's not an exoneration case where someone's in prison. It's a case where she had the opportunity to contest the conviction and didn't. And it raises great prejudice to us. Four clients that I have, one is a former mayor, who is no longer mayor and has been mayor for 10 years. Mr. DeLeo hasn't been a judge for quite a long time and I believe is out of state. The city of Linden's there and Mr. Scatari is no longer a prosecutor. But we're talking about events that happened in 2007, 15 years ago. So the question really, the issue really is, how long does someone have to wait versus balancing the prejudice against the defendants? And that's the whole idea of the statute of limitations is for a judicial economy and to give the defendants a fair chance to defend the case. Is there any case that you know of that supports you in connection with a either statute of limitations or latches? In effect, what you're asking us to do is hold that the plaintiff here forfeits her heck damages claims if she doesn't diligently pursue that favorable termination. Isn't that correct? Judge Ambrose, I don't have a case that I cited in the brief to support that. So if we apply heck, it really seems that the time starts when there's a favorable termination. In this case, which is almost like it's out of Kafka. I mean, I can't imagine a fact pattern much. And you see the state prosecutor later on refused to oppose the application when she got counsel years later for post-conviction relief because he said, quote, the stench was too great, close quote, and the interest of justice would not be served. You know, the sentence was illegal and the procedural defects were there ab initio from the beginning of the case.  Almost a bar exam set of facts, Judge. That's exactly what I was thinking. If I were to do an exam for a bar, this would be on it in the symbol section. But the reply to that, Your Honor, is there's no question that up until that point, the conviction had stood. But the fact of the matter is, and Judge Wiginton pointed it out, she had an attorney back in 2008, Krupa, who recognized all this and argued this. And that, again, gets back to the issue of when does one have to move to get a favorable disposition? Is it a logic argument that you're making? I couldn't. You broke up, Judge. Is it a logic argument you're making? Yes. And where was that made in your brief, the latches argument? Don't believe it was, Your Honor. And I'll rest on my brief unless there's other questions. Any further questions of my colleagues? No, thank you. No. All right. Mr. Singleton, anything you really want to add? Well, Your Honor, the case that I was searching for before was Wiltz v. Middlesex City, Office of the Prosecutor. And the site? It's 249, Federal Appeal 944-949. Sorry, 249, go ahead. Is it Atlantic Second or what? No. FAPPX 944-949. Third Circuit case, Your Honor. 944-949. And what was the date of the case? Wiltz, W-I-L-T-Z v. Middlesex County, Office of the Prosecutor. And the year that that was decided? 2007, Your Honor. Okay, thank you very much. Anything else you want to add? I have nothing further, Your Honor. All right. Thank you for your time. Thank you. Thank you to both counsel for being with us today. And we'll take the matter under advisement.